## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KELLIE HOUSE, CHARNICA MCLAMORE, RAYMON MCLAMORE and CAMREN MCLAMORE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>MEDICAL UNIVERSITY HOSPITAL AUTHORITY<br><br>                    Defendant. | **CASE NO. 4:26-cv-00360-JD**<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kellie House, Charnica McLamore, Raymon McLamore, and Camren McLamore ("Plaintiffs"), through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Medical University Hospital Authority ("MUHA," or "Defendant"). Plaintiffs allege the following on information and belief – except as to their own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.      This Class Action arises from a recent cyberattack resulting in a data breach of information in the possession and custody and/or control of Defendant (the "Data Breach").

2.      MUHA chose to allow a third party to have access and control over its patients' highly sensitive personal and health information.

3.      On information and belief, the Data Breach occurred as early as January 22, 2025. Following an internal investigation, on information and belief, Defendant learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients'

1

personally identifying information ("PII") including names, Social Security number as we as well as personal health information, "(PHI)", including patient medical records, medical record numbers, doctors, diagnosis, medicines, test results, images, care, and treatment. Plaintiffs refer to both PII and PHI collectively as "Private Information."

4.     Defendant continued to fail to promptly inform Class Members even though Plaintiffs and potentially thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

5.     Defendant continues to obfuscate the details of the breach as well as the nature of the breach and the threat it posed—how many people were impacted, how the breach happened, and why Defendant delayed for months notification to victims that hackers had gained access to highly sensitive Private Information.

6.     Defendant's failure to timely detect and report the Data Breach made patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

7.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

8.     In failing to adequately protect Plaintiffs' and the Class's Private Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its current and former patients and prospective patients.

9.      Plaintiffs and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Private Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10.      Plaintiffs received medical care from Defendant MUHA, maintained patient relationships with MUHA, and suffered harm as victims of the Data Breach.

11.      Accordingly, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

12.      Plaintiff Kellie House is a natural person and citizen of Florence, South Carolina where she intends to remain.

13.      Plaintiff Charnica McLamore is a natural person and citizen of Lexington Park, Maryland where she intends to remain.

14.      Plaintiff Raymon McLamore is a natural person and citizen of Lexington Park, Maryland where he intends to remain.

15.      Plaintiff Camren McLamore is a natural person and citizen of Goose Creek, South Carolina where she intends to remain.

16.      Defendant, Medical University Hospital Authority is a South Carolina governmental entity which operates the healthcare system affected by the Data Breach. MUHA's principal place of business is located at 169 Ashley Avenue, Charleston, South Carolina 29425.

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and cost. At least one Plaintiff and Defendant are of different states and there are over 100 putative Class members.

18.    This Court has personal jurisdiction over Defendant because they are headquartered in South Carolina, regularly conduct business in South Carolina and have sufficient minimum contacts in South Carolina.

19.    Venue is proper in this Court because Defendant's principal place of business is located in this District.

**BACKGROUND FACTS**

*Medical University Hospital Authority*

20.    Medical University Hospital Authority operates the wider MUSC Healthcare system, which includes the MUSC Health Florence Medical Center where Plaintiff Camren McLamore received medical treatment.

21.    MUHA has the authority to operate the MUSC Healthcare system under S.C. Code. § 59-123-60.

22.    As such, references to the privacy policies and practices that MUSC Health employs are under the direct supervision of MUHA, and thus MUHA is responsible for the implementation of such policies and procedures.

23.    MUSC Health is "South Carolina's only comprehensive academic health system with a mission to preserve and optimize human life in South Carolina and beyond."[1]

---

[1] https://www.musc.edu/about/mission (last visited March 5, 2026).

24.     MUSC Health acknowledges that "we refuse to compromise on something as important as your health. We are on an ambitious journey to drive innovation, unlock human potential and ensure that breakthrough care includes endless caring. We serve every county in South Carolina, and our work fuels new thinking and solutions that better our communities and the world."[2]

25.     As part of its business, MUSC Health receives and maintains the Private Information of thousands of current and former patients. In doing so, MUSC Health implicitly and explicitly promises to safeguard their Private Information.

26.     In collecting and maintaining its current and former patients' Private Information, MUSC agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Private Information.

27.     Specifically, MUSC Health's privacy practices states that "MUSC is committed to protecting the privacy of health information we create and obtain about you. . . . We are required by law to: (i) make sure your health information is protected; (ii) give you this Notice describing our legal duties and privacy practices with respect to your health information; and (iii) follow the terms of the Notice that is currently in effect."[3]

28.     Despite recognizing its duty to do so, on information and belief, MUHA d/b/a MUSC Health has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Private Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, MUHA left significant vulnerabilities in its

---

[2] https://www.musc.edu/about/our-story (last visited March 5, 2026).
[3] https://www.musc.edu/enterprise/about/compliance/ (last visited March 5, 2026).

storage of Plaintiffs' and the Class's Private Information for cybercriminals to exploit and gain access to patients' Private Information.

***The Data Breach***

29.     Plaintiff Kellie House is a MUHA patient. As a condition of treatment with MUHA, Plaintiff House provided MUHA with her Private Information. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

30.     Plaintiff Charnica McLamore is a MUHA patient. As a condition of treatment with MUHA, Plaintiff McLamore provided MUHA with her Private Information. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

31.     Plaintiff Raymon McLamore is a MUHA patient. As a condition of treatment with MUHA, Plaintiff McLamore provided MUHA with his Private Information. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

32.     Plaintiff Camren McLamore is a MUHA patient. As a condition of treatment with MUHA, Plaintiff McLamore provided MUHA with her Private Information. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

33.     MUHA provided a third party with Plaintiffs' Private Information.

34.     Defendant collects and maintains patients' Private Information in their computer systems.

35.     In collecting and maintaining the Private Information, Defendant implicitly agree

that they will safeguard the data using reasonable means according to their internal policies and federal law.

36.     According to MUHA's notice to Plaintiffs, its previously used EHR vendor, informed MUHA on March 15, 2025, that MUHA's current and former patients may have been affected by a Data Breach on the third parties' "legacy" systems as early as January 22, 2025.[4]

37.     On September 26, 2025, the third party provided MUHA and thus MUHA with a "list of patients whose information may have been involved in this incident."[5]

38.     The types of information exposed include "name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment."[6]

39.     Due to intentionally obfuscating language and a lack of formal notification, it is unclear how long it took Defendant to discover that they had been subject to a breach and how long cybercriminals had unfettered access to Plaintiffs' and the Class's most sensitive information.

40.     In other words, Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its patients' highly sensitive Private Information. MUHA knew or should have known that granting a third party access to Plaintiffs' Private Information would result in a Data Breach.

41.     Despite their duties and alleged commitments to safeguard Private Information, Defendant did not in fact follow industry standard practices in securing consumers' Private Information, as evidenced by the Data Breach.

42.     On information and belief, Defendant plan to offer several months of

---

[4] See Notice of Data Breach Letter dated November 21, 2025, attached hereto as Exhibit A.
[5] *Id.*
[6] *Id.*

complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Private Information that cannot be changed, such as Social Security numbers.

43. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' Private Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

44. On information and belief, Defendant failed to adequately train and supervise their IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over their patients' Private Information. Defendant's negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information.

***The Data Breach was a Foreseeable Risk of which Defendant were on Notice.***

45. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

46. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendant knew or should have known that their electronic records and customers' Private Information would be targeted by cybercriminals.

47. In 2024, a record 3,158 data breaches occurred—resulting in 1,350,835,988 victim notices (i.e., 211% increase yearover-year).[7]

48. Indeed, cyberattacks against the healthcare industry have become increasingly

---

[7] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.

common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cyber crime." [8]

49.    Cyberattacks on medical systems and healthcare partner and provider companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly." [9]

50.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry.

***Plaintiff Kellie House's Experience***

51.    Plaintiff Kellie House is a MUHA patient. As a condition of treatment with MUHA, Plaintiff provided it with her Private Information including but not limited to her name, Social Security number, and medical information including doctors, diagnosis, medicines, test results, images, care, treatment, and medical record numbers. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

52.    MUHA shared Plaintiff's Private Information with a third party as part of its provision of services to MUHA. In other words, MUHA provided a third party with Plaintiff's

---

[8] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited March 5, 2026).
[9] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 5, 2026).

Private Information.

53.     Plaintiff Kellie provided her Private Information to Defendant and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

54.     Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

55.     As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

56.     Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

57.     Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

58.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

59.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

60.    Specifically, Plaintiff Kellie has received notification regarding a credit card listed on her credit report that was not initiated by her and unauthorized charges on her bank account.

61.    Also following the Data Breach, Plaintiff Kellie has been experiencing a sharp increase in spam calls and texts, receiving calls daily, further evidence that her Private Information is now in the hands of cyber criminals.

62.    Moreover, Plaintiff is experiencing fear and anxiety as a result of the Data Breach. She is concerned that her information is in the possession of someone with malicious intent and will negatively impact her future.

63.    Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[10] On information and belief, the spam call and fraudulent charges Plaintiff experienced is a result of the Data Breach.

64.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff Charnica McLamore's Experience***

65.    Plaintiff Charnica McLamore is a MUHA patient. As a condition of treatment with MUHA, Plaintiff provided it with her Private Information including but not limited to her name, Social Security number, and medical information including doctors, diagnosis, medicines, test results, images, care, treatment, and medical record numbers. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to

---

[10] What do Hackers do with Stolen Information, AURA, Sept. 5, 2023, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

obtain treatment and care.

66.     MUHA shared Plaintiff's Private Information with a third party as part of its provision of services to MUHA. In other words, MUHA provided a third party with Plaintiff's Private Information.

67.     Plaintiff Charnica provided her Private Information to Defendant and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

68.     Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

69.     As a result of the Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

70.     Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

71.     Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

72.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

73. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

74. Specifically, Plaintiff Charnica has received notification regarding a credit card inquiry that was not initiated by her. Mastercard stated that she was qualified for a credit card, and a banking application contacted her that her account was ready to set up, her email was used and they had access to her Social Security number.

75. Also following the Data Breach, Plaintiff Charnica has been experiencing a sharp increase in spam calls and texts, receiving calls daily, further evidencing that her Private Information is now in the hands of cyber criminals.

76. Plaintiff has also had to reset automatic billing instructions tied to compromised accounts.

77. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[11] On information and belief, the spam call and fraudulent charges Plaintiff experienced is a result of the Data Breach.

78. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant' possession, is protected, and safeguarded from future breaches.

***Plaintiff Raymon McLamore's Experience***

79. Plaintiff Raymon is a MUHA patient. As a condition of treatment with MUHA, Plaintiff provided it with his Private Information including but not limited to his name, Social

---

[11] *Id.*

Security number, and medical information including doctors, diagnosis, medicines, test results, images, care, treatment, and medical record numbers. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

80.    MUHA shared Plaintiff's Private Information with a third party as part of its provision of services to MUHA. In other words, MUHA provided that third party with Plaintiff's Private Information.

81.    Plaintiff Raymon provided his Private Information to Defendant and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

82.    Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by continuing to fail to notify him promptly.

83.    As a result of the Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

84.    Plaintiff Raymon has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

85.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

86.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

87.     Plaintiff Raymon has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties and possibly criminals.

88.     Also following the Data Breach, Plaintiff has been experiencing a sharp increase in spam calls and texts, further evidencing that his Private Information is now in the hands of cyber criminals.

89.     Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[12] On information and belief, the spam call and fraudulent charges Plaintiff experienced is a result of the Data Breach.

90.     Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant' possession, is protected, and safeguarded from future breaches.

***Plaintiff Camren McLamore's Experience***

91.     Plaintiff Camren is a MUHA patient. As a condition of treatment with MUHA, Plaintiff provided it with her Private Information including but not limited to her name, Social Security number, and medical information including doctors, diagnosis, medicines, test results, images, care, treatment, and medical record numbers. MUHA used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to

---

[12] *Id.*

obtain treatment and care.

92.    MUHA shared Plaintiff's Private Information with a third party as part of its provision of services to MUHA. In other words, MUHA provided that third party with Plaintiff's Private Information.

93.    Plaintiff Camren provided her Private Information to Defendant and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

94.    Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

95.    As a result of the Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

96.    Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

97.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

98.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

99.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

100.    Also following the Data Breach, Plaintiff Camren has been experiencing a sharp increase in spam calls and texts, further evidencing that her Private Information is now in the hands of cyber criminals.

101.    Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Data Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[13] On information and belief, the spam call and fraudulent charges Plaintiff experienced is a result of the Data Breach.

102.    Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant' possession, is protected, and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

103.    Plaintiffs and members of the proposed Class have suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

104.    As a result of Defendant' failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.  The loss of the opportunity to control how their Private Information is used;

    b.  The diminution in value of their Private Information;

    c.  The compromise and continuing publication of their Private Information;

---

[13] *Id.*

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Private Information; and

h. The continued risk to their Private Information, which remains in Defendant' possession and is subject to further breaches so long as Defendant fail to undertake the appropriate measures to protect the Private Information in their possession.

105. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

106. The value of Plaintiffs' and the Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen Private Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

107. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

108. One such example of criminals using Private Information for profit is the development of "Fullz" packages.

109. Cyber-criminals can cross-reference two sources of Private Information to marry

18

unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

110.    The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and the Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

111.    Defendant disclosed the Private Information of Plaintiffs and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

112.    Defendant' failure to properly notify Plaintiffs and members of the Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

**Defendant Could Have Prevented the Data Breach**

113.    Data breaches are preventable.[14] As Lucy Thomson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[15] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[16]

114.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [17]

115.    In a Data Breach like the one here, many failures laid the groundwork for the Breach.

**Defendant failed to adhere to FTC guidelines.**

116.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

117.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices

---

[14] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thomson, ed., 2012).
[15] *Id.* at 17.
[16] *Id.* at 28.
[17] *Id.*

for business. The guidelines explain that businesses should:

    a.     protect the sensitive consumer information that they keep;

    b.     properly dispose of Private Information that is no longer needed;

    c.     encrypt information stored on computer networks;

    a.     understand their network's vulnerabilities; and

    b.     implement policies to correct security problems.

118.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

119.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

120.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

121.    Defendant' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

122.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [18]

123.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[19]

124.    The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

    a.  Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    c.  Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

    d.  Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

---

[18] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[19] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

e.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.   Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.   Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.   Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.   Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

125.   Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Fail to Comply with Industry Standards***

126.   As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

127.   Several best practices have been identified that a minimum should be implemented

by employers in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

128.    Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

129.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-02) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

130.    These foregoing frameworks are existing and applicable industry standards for an Defendant's obligations to provide adequate data security for their patients. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

24

## CLASS ACTION ALLEGATIONS

131.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rule of Civil Procedure.

132.    The classes that Plaintiffs seek to represent are defined as follows:

> **MUHA Defendant Nationwide Class:**
> All individuals residing in the United States whose Private Information was compromised in the Data Breach, which occurred on or around January 22, 2025, which information was provided to a vendor by MUHA, including all those individuals who receive notice of the Data Breach.

> **MUHA Defendant South Carolina State Subclass:**
> All individuals residing in South Carolina whose Private Information was compromised in the Data Breach, which occurred on or around January 22, 2025, which information was provided to a vendor by MUHA, including all those individuals who receive notice of the Data Breach.

133.    Collectively, the Class and Subclasses are referred to as the "Classes" or "Class members."

134.    Excluded from the Classes are Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

135.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

136.    The proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

137.    Numerosity. The Class members are so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class members through

this class action will benefit both the parties and this Court. The exact size of the Class and the identities of Class members are ascertainable through Oracle Health's and its customers' records, including but not limited to, the files implicated in the Data Breach.

138.    <u>Commonality.</u> There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.   Whether Defendants engaged in the conduct alleged herein;

b.   When Defendants learned of the Data Breach;

c.   Whether Defendants' response to the Data Breach was adequate;

d.   Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class members' Private Information;

e.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f.   Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.   Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h.   Whether Defendants owed a duty to Plaintiff and Class members to safeguard their Private Information;

i.   Whether Defendants breached their duty to Plaintiff and Class members to safeguard their Private Information;

j.   Whether criminals obtained Plaintiffs' and Class members' Private Information via

the Data Breach;

k. Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class members;

l. Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

m. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class members suffered as a result of Defendants' misconduct;

o. Whether Defendants' conduct was negligent;

p. Whether Defendants' conduct was per se negligent;

q. Whether either Defendant was unjustly enriched;

r. Whether Plaintiff and Class members are entitled to actual and/or statutory damages;

s. Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

139. <u>Typicality.</u> Plaintiffs' claims are typical of those of other Class members because Plaintiffs' Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all Class members were injured through the common misconduct of Defendants. Plaintiffs are

advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to the named Plaintiffs. The claims of the named Plaintiffs and those of Class members arise from the same operative facts and are based on the same legal theories.

140.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff's counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

141.    <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiffs and Class members, in that Plaintiff's and Class members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

142.    <u>Superiority.</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each

Class member.

143.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class members affected by the Data Breach.

## FIRST CAUSE OF ACTION
### Negligence
### (Behalf of Plaintiffs and the Classes)

144.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

145.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

146.    Plaintiffs and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

147.    Defendant owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

148.    Defendant have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if their Private Information was wrongfully disclosed.

149.    Defendant owed these duties to Plaintiffs and Class Members because they are

members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from their inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs' and Class Members' Private Information.

150.    Defendant owed—to Plaintiffs and Class Members—at least the following duties to:

    a.  exercise reasonable care in handling and using the Private Information in their care and custody;

    b.  implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c.  promptly detect attempts at unauthorized access;

    d.  notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

151.    Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

152.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

153.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

154.    Defendant' duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

155.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

156.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant' duty to protect Plaintiffs' and the Class Members' Private Information.

157.    Defendant violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant' conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

158.    Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiffs' and Class Members' PHI.

159.    Defendant violated their duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed supra. Here too, Defendant conduct was particularly unreasonable given the nature and amount of PHI that

Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

160. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant' databases containing the Private Information —whether by malware or otherwise.

161. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

162. Defendant improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

163. Defendant breached these duties as evidenced by the Data Breach.

164. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' Private Information by:

165. disclosing and providing access to this information to third parties and

166. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

167. Defendant breached their duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs' and Class Members' injury.

168.     Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and Class Members' injuries-in-fact.

169.     Defendant have admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

170.     As a direct and traceable result of Defendant' negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

171.     And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

172.     Defendant' breach of their common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On behalf of Plaintiffs and the Classes)

173.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the

MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the

MUHA South Carolina Subclass.

174.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set

forth herein.

175.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate

computer systems and data security practices to safeguard Plaintiffs' and Class members' PII/PHI.

176.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as

Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC

publications and orders promulgated pursuant to the FTC Act also form part of the basis of

Defendant' duty to protect Plaintiffs and the Class members' sensitive PII/PHI.

177.    Defendant breached its respective duties to Plaintiffs and Class members under the

FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security

practices to safeguard PII/PHI.

178.    Defendant violated its duty under Section 5 of the FTC Act by failing to use

reasonable measures to protect PII/PHI and not complying with applicable industry standards as

described in detail herein. Defendant' conduct was particularly unreasonable given the nature and

amount of PII/PHI Defendant had collected and stored and the foreseeable consequences of a data

breach, including, specifically, the immense damages that would result to individuals in the event

of a breach, which ultimately came to pass.

34

179.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

180.    Defendant' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

181.    Defendant' duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

182.    Defendant violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendant' conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

183.    But for Defendant's wrongful and negligent breach of their duties owed, Plaintiffs and Class members would not have been injured.

184.    The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendant' breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

185.    Defendant' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

186.    As a direct and proximate result of Defendant' negligence *per se*, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### THIRD CAUSE OF ACTION
**Breach of an Implied Contract**
**(Against Defendant on Behalf of Plaintiffs and the Classes)**

187.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

188.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

189.    Plaintiffs and the Class delivered their Private Information to MUHA as part of the process of obtaining treatment and services provided by MUHA.

190.    Plaintiffs and Class Members entered into implied contracts with MUHA under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if and when their data had been breached and compromised. This contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiffs' and Class Members' data in a manner which comported with the reasonable expectations of privacy

and protection attendant to entrusting such data to MUHA.

191.    In providing their Private Information, Plaintiffs and Class Members entered into an implied contract with MUHA whereby MUHA, in receiving such data, became obligated to reasonably safeguard Plaintiffs' and the other Class Members' Private Information.

192.    In delivering their Private Information to MUHA, Plaintiffs and Class Members intended and understood that MUHA would adequately safeguard that data.

193.    Plaintiffs and the Class Members would not have entrusted their Private Information to MUHA in the absence of such an implied contract.

194.    MUHA accepted possession of Plaintiffs' and Class Members' Private Information.

195.    Had Defendant MUHA disclosed to Plaintiffs and Class Members that Defendant did not have adequate computer systems and security practices to secure consumers' Private Information, Plaintiffs and members of the Class would not have provided their Private Information to Defendant.

196.    MUHA recognized that consumer's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and Class Members.

197.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with MUHA.

198.    MUHA breached the implied contract with Plaintiffs and Class Members by failing to take reasonable measures to safeguard its data.

199.    MUHA breached the implied contract with Plaintiffs and Class Members by failing to promptly notify them of the access to and exfiltration of their Private Information.

200.     As a direct and proximate result of the breach of the contractual duties, Plaintiffs and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiffs and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and Class Members' Private Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Private Information; (g) the diminution in the value of the services bargained for as Plaintiffs and Class Members were deprived of the data protection and security that Defendant promised when Plaintiffs and the proposed class entrusted Defendant with their Private Information; and (h) the continued and substantial risk to Plaintiffs' and Class Members' Private Information, which remains in the MUHA's possession with inadequate measures to protect Plaintiffs' and Class Members' Private Information.

### FOURTH CAUSE OF ACTION
**Breach of Third-Party Beneficiary Contract**
**(Against Defendant on Behalf of Plaintiffs and the Classes)**

201.     This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

202.     Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

203.     MUHA entered into a contract with its former electronic health record ("EHR") vendor for electronic health record management services.

204.    These contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their confidential medical information that Defendant agreed to collect and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class were the direct and primary objective of the contracting parties.

205.    Defendant knew that if it were to breach these contracts with its EHR provider clients, the clients' patients, including Plaintiffs and the Classes, would be harmed by, among other things, fraudulent misuse of their Private Information.

206.    Defendant breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiffs' and Class Members' Private Information.

207.    As reasonably foreseeable result of the breach, Plaintiffs and the Class were harmed by Defendant's failure to use reasonable data security measures to store their Private Information, including but not limited to, the actual harm through the loss of their Private Information to cybercriminals.

208.    Accordingly, Plaintiffs and the Classes are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

<u>**FIFTH CAUSE OF ACTION**</u>
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Classes)**

209.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

210.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

211. Given the relationship between Defendant and Plaintiffs and Class members, where Defendant became guardian of Plaintiffs' and Class members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Class members, (1) for the safeguarding of Plaintiffs and Class members' Private Information; (2) to timely notify Plaintiffs and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

212. Defendant had a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of Defendant' relationship with them—especially to secure their PII/PHI.

213. Because of the highly sensitive nature of the Private Information, Plaintiffs and Class members would not have entrusted Defendant, or anyone in Defendant' position, to retain their Private Information had they known the reality of Defendant' inadequate data security practices.

214. Defendant breached their fiduciary duties to Plaintiffs and Class members by failing to sufficiently encrypt or otherwise protect Plaintiffs' and Class members' Private Information.

215. Defendant also breached their fiduciary duties to Plaintiffs and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

216. As a direct and proximate result of Defendant' breach of its fiduciary duties, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (Against Defendant on Behalf of Plaintiffs and the Classes)

217.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

218.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

219.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

220.    Plaintiffs and members of the Class conferred a benefit upon Defendant in providing the Private Information to Defendant.

221.    Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiffs and the Class. Defendant also benefited from the receipt of Plaintiffs' and the Class's Private Information, as this was used to facilitate the treatment, services, and goods they sold to Plaintiffs and the Class.

222.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs and the Class's Private Information because Defendant failed to adequately protect their Private Information. Plaintiffs and the proposed Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

223.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## SEVENTH CAUSE OF ACTION
### Breach of Confidence
### (On behalf of Plaintiffs and the Classes)

224.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

225.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

226.    Plaintiffs and Class members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and ultimately accessed and acquired in the Data Breach.

227.    As healthcare service providers, Defendant have a special relationship with their patients, including Plaintiffs and Class members. Because of that special relationship, Defendant were provided with and stored Plaintiffs' and Class members' Private Information and had a duty to maintain such Information in confidence.

228.    Patients like Plaintiffs and Class members have a privacy interest in personal medical and other matters, and Defendant had a duty not to disclose such matters concerning their patients.

229.    As a result of the parties' relationship, Defendant had possession and knowledge of highly sensitive and confidential Private Information belonging to Plaintiffs and the Class members, information that was not generally known.

230.    Plaintiffs and the Class members did not consent nor authorize Defendant to release or disclose their Private Information to an unknown criminal actor.

231.    Defendant breached their duty of confidence owed to Plaintiffs and the Class

members by, among other things: (a) mismanaging their computer systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class members' Private Information; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the Data Breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies and practices published to their patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class members' Private Information to a criminal third party.

232.    But for Defendant' wrongful breach of their duty of confidence owed to Plaintiffs and Class members, their Private Information would not have been compromised.

233.    As a direct and proximate result of Defendant' wrongful breach of their duty of confidence, Plaintiffs and the Class members have suffered and will continue to suffer the injuries and damages alleged herein.

234.    It would be inequitable for Defendant to retain the benefit of controlling and maintaining Plaintiffs' and Class members' Private Information at the expense of Plaintiffs and the Class members.

235.    Plaintiffs and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Invasion of Privacy
### (On behalf of Plaintiffs and the Classes)

236.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

237.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

238.    Plaintiffs and the Class members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

239.    As a result of Defendant' conduct, publicity was given to Plaintiffs' and Class members' Private Information, which necessarily includes matters concerning their private life.

240.    A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and the Class members' Private Information to be highly offensive.

241.    Plaintiffs' and the Class members' Private Information is not of legitimate public concern and should remain private.

242.    As a direct and proximate result of Defendant' public disclosure of private facts, Plaintiffs and the Class members are at a current and ongoing risk of identity theft and sustained injuries and damages as alleged herein.

243.    Plaintiffs and the Class members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

244.    Plaintiffs and the Class members are also entitled to injunctive relief requiring Defendant to, inter alia, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately

provide adequate identity protection and credit monitoring services to all Class members.

## NINTH CAUSE OF ACTION
### Declaratory Judgment
### (On behalf of Plaintiffs and the Classes)

245.     This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

246.     Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set forth herein.

247.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

248.     In the of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiffs and the Class allege that Defendant's actions were—and still are—inadequate and unreasonable. And Plaintiffs and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

249.     Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

250.     Defendant owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

251.     Defendant have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

252.    Defendant breached, and continue to breach, their duties by failing to use reasonable measures to protect the data entrusted to them; and

253.    Defendant' breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class members.

254.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to them.

255.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experience a second data breach.

256.    And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs' and Class members' injuries.

257.    If an injunction is not issued, the resulting hardship to Plaintiffs and the Class members far exceed the minimal hardship that Defendant could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class members, and the public at large.

**TENTH CAUSE OF ACTION**
**South Carolina Data Breach Security Act**
**S.C. Code Ann. §§ 39-1-90,** *et seq.*
**(On behalf of Plaintiffs and the Classes)**

258.    This claim is brought: 1) by all the Plaintiffs against MUHA, on behalf of the MUHA Nationwide Class, or 2) alternatively by Plaintiffs against MUHA, on behalf of the MUHA South Carolina Subclass.

259.    Plaintiffs restate the allegations in Paragraphs 1 through 143 above, as if fully set

forth herein.

260.    MUHA are businesses that own or license computerized data or other data that includes personal identifying information (for the purpose of this count, "PII"), as defined by S.C. Code Ann. § 39-1-90(A).

261.    Plaintiffs' and Class Members' PII (e.g., Social Security numbers) includes personal identifying information as covered under S.C. Code Ann. § 39-1-90(D)(3).

262.    Defendant are required to accurately notify Plaintiffs and Class Members following discovery or notification of a breach of its data security system if PII that was not rendered unusable through encryption, redaction, or other methods was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of harm, in the most expedient time possible and without unreasonable delay under S.C. Code Ann. § 39-1-90(A).

263.    Because Defendant discovered a breach of its data security system in which PII that was not rendered unusable through encryption, redaction, or other methods, was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of harm, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by S.C. Code Ann. § 39-1-90(A).

264.    By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated S.C. Code Ann. § 39-1-90(A).

265.    As a direct and proximate result of Defendant' violations of S.C. Code Ann. § 39-1-90(A), Plaintiffs and Class Members suffered damages, as described above.

266.    Plaintiffs and Class Members seek relief under S.C. Code Ann. § 39-1-90(G), including actual damages and injunctive relief.

## PRAYER FOR RELIEF

267.    Plaintiffs and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

a.    Certifying this action as a class action, defining the Classes as requested herein, appointing the undersigned as class counsel, and finding that Plaintiffs are proper and adequate representatives of the Classes requested herein;

b.    Awarding Plaintiffs and Class members appropriate monetary relief, including actual damages, statutory damages, nominal damages, equitable relief, restitution, disgorgement, and statutory costs;

c.    Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.    Instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class members;

e.    Requiring Defendants to pay the costs involved in notifying Class members about the judgment and administering the claims process;

f.    Requiring Defendants to implement enhanced data security measures in order to better protect the Private Information in their possession and control;

g.    Awarding Plaintiffs and Class members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h.    Awarding such other and further relief as this Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that this matter be tried before a jury.

Dated: March 5, 2026

Respectfully submitted,

By: /s/ Paul Doolittle
Paul Doolittle (SC Fed ID No. 6012)
**POULIN WILLEY ANASTOPOULO LLP**
32 Ann Street
Charleston, South Carolina 29403
(803) 222-2222
Paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

Lynn A. Toops*
Amina A. Thomas*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
(317) 636-2593 (facsimile)
ltoops@cohenmalad.com
athomas@cohenmalad.com

Thomas E. Loeser*
**COTCHETT, PITRE & McCARTHY LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
(206) 802-1272
tloeser@cpmlegal.com

Norman E. Siegel*
Barrett J. Vahle*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64113
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson*
**WAGSTAFF & CARTMELL, LLP**
4740 Grand Ave., Suite #300
Kansas City, MO 64112
(816) 701-1100
(816) 531-2372 (facsimile)
thudson@wcllp.com

*Pro hac vice forthcoming*

*Attorneys for Plaintiffs and Proposed Classes*